Good morning, your honors. Grant Kim for the appellant, Maria Corso. I'd like to reserve two minutes for rebuttal, okay? May it please the court, we thank your honors for holding our argument. This case raises important legal issues with implications for other cases. It also has great personal importance for our client, Maria Corso. The Rejuvi product caused Ms. Corso to suffer severe injuries over 14 years ago that have left her permanently disabled. The Australian court awarded compensation over five years ago, but Rejuvi has fought enforcement in three separate cases. The US enforcement action, the Australia set-aside case, and this bankruptcy case. Rejuvi argues that the Australian court lacked personal jurisdiction. That defense fails because it's barred by the California Uniform Act on recognition of foreign judgments, and also because jurisdiction is proper in any event. Now, I'll be highlighting some key points about the Uniform Act and personal jurisdiction, and I plan to spend about equal time on those two. So, in our view, this case begins and should end with the plain language of the Uniform Act. Recognition of a foreign judgment shall not be refused for lack of personal jurisdiction under law if the defendant voluntarily appeared in the foreign court for a purpose other than contesting jurisdiction. That test is met here. Rejuvi voluntarily appeared by filing a set-aside application in Australia that didn't contest jurisdiction. Nothing forced Rejuvi to file that application. Rejuvi didn't tell the Australian court it objected to personal jurisdiction or was making a special appearance. On the contrary, Rejuvi said it sought to set aside the judgment so it could raise merits defenses in Australia that were not allowed in the US enforcement action. Rejuvi doesn't dispute that it voluntarily appeared in Australia for a purpose other than contesting jurisdiction. Instead, it talks about other stuff that has nothing to do with the Uniform Act. For example, it relies on the federal rules of civil procedure to argue that it preserved personal jurisdiction by pleading it in the US. But this case is about the Uniform Act, not the federal rules. The issue is whether Rejuvi voluntarily appeared in Australia, and that depends on what Rejuvi did in Australia, not the US. To preserve its defense, Rejuvi had to tell the Australian court it was objecting to personal jurisdiction. And Rejuvi didn't do that. Now, Rejuvi also suggests that the South Australia court rule somehow prevented it from objecting to jurisdiction in Australia. But the rules don't do that. They don't impose any prohibition on objecting to jurisdiction. And more importantly, the rules didn't force Rejuvi to go to Australia in the first place. Rejuvi could have stayed in the US and opposed recognition of the judgment for lack of jurisdiction and lack of notice in the US only. That was an option, but Rejuvi chose to go to Australia voluntarily. Now, Rejuvi also suggests that enforcing the Uniform Act would waive its constitutional due process rights. But there are no such rights at issue here. The Australian court found in its order denying set-aside that Rejuvi received ample notice of the Australian case, but chose to ignore it. Rejuvi filed its set-aside application on the same date that it filed its opposition to summary judgment under the Uniform Act here in the US. And so it certainly knew about the Uniform Act, but it decided to go ahead and appear in Australia without contesting jurisdiction. Rejuvi was certainly entitled to do that, but they have to accept the consequences of that choice. Now, there are two other points I'd like to address, which were mentioned by the district court in this case, but not relied on by Rejuvi. First, the district court suggested that Rejuvi set-aside application for lack of notice was effectively a challenge to personal jurisdiction. But lack of notice, lack of jurisdiction, those are separate things. Notice concerns what happens after the lawsuit is filed. Personal jurisdiction depends on contacts with the firm before the lawsuit was filed. Those are separate issues. And in fact, the Uniform Act not quite so clean as that, meaning service of notice can, I mean, the colloquial term is tag jurisdiction. Service of notice can be an act that in fact produces impersonal jurisdiction. Yes, that's a fair point, Your Honor. And tag jurisdiction is the one point of overlap. This case is not about that tag jurisdiction. There was no service in Australia. What the California in South San Francisco, this is not about tag jurisdiction. So I agree. In that one case, it overlaps, but that's not this case. And in fact, this court, there's a case called American Associated Naturopathic Physicians versus Hayhurst. Both sides have cited. That one actually had to do with service of process and personal jurisdiction. In that case, it involved not the Uniform Act, but the court found that personal jurisdiction and service process were separate defenses. So by raising lack of service, you didn't raise lack of personal jurisdiction. So another thing that the district court mentioned is the Uniform Act would bar the personal jurisdiction offense only if the Australian court set aside the judgment and Rujubi litigated the merits. But that's not what the Uniform Act says. It talks about the defendant voluntarily appearing for a purpose other than contesting jurisdiction. The moment Rujubi filed its set-aside application that didn't contest the jurisdiction, it voluntarily appeared. It doesn't matter what happened after that. But in any event, Rujubi went ahead and tried to make merits and we've cited that as page 40 of our opening brief. Now finally on Uniform Act, the case law. Yes. I'm sorry. Do you read the district court as holding that the challenge to service was sufficient to challenge personal jurisdiction? Where did the district court go wrong here? It never said that. It's implied. We've explained in our opening brief. When I read the decision, I wasn't quite sure of the basis. So we tried to figure out. I tried to figure out what it was saying. So we've explained why we've implied that in our brief, but I don't think it actually said that. Okay. So anyway, we've cited a bunch of cases in our brief. I'll just submit on our discussion. The point is that a lot of cases, the New York federal courts, state court, and Judge D'Avila in the Northern District of California, all found under very similar circumstances that a set-aside application or a similar kind of post-judgment challenge waives the personal jurisdiction defense into the Uniform Act. Rujubi, could you address the McIntyre question, assuming we get to it? Sure. McIntyre. So McIntyre, as this court has recognized, is a narrow polar-allied decision. But I think the most important thing is McIntyre is what I would call a routine stream-of-commerce case. The defendant puts his product into the stream-of-commerce and waits. Now, they did go to trade shows in the U.S., but there's no connection with the specific injury. Here, it's very different. Rujubi didn't just send it off to Australia and wait. Rujubi actually traveled to Australia twice, put on training seminars, and taught people in Australia how to apply it. And one of the people attended was Michelle Babbage, who was from South Australia. And I emphasize these are training seminars. They're not trade shows. Trade shows, you have thousands of people who arrive. They're not necessarily invited by a particular person. Here, it's Rujubi, presumably in a hotel room or similar location with a small group. And their distributor invited all these people. So we say it's very targeted. And this course, I know Your Honor is very familiar with a lot of these cases because Your Honor actually authored them. But Schwarzenegger and Mavericks and College Source, Bancroft and Masters, these other cases, it's the targeting. And what were they doing at those seminars? They were expressly aimed at persuading the clinicians to use the product and to persuade their customers to use the product. That's what they were doing. That's express aiming. And there was nothing like that in Africa, just generic trade shows, no direct connection. And may I ask, what in your view is the appropriate unit of analysis? Is it Australia as a whole, or do we need to find targeting of South Australia in particular? Well, we've assumed that it's South Australia, and we believe we can do South Australia. There's actually an interesting question there, which we haven't addressed. And the U.S. has got 50 different states. Australia only has six. Does it matter whether Australia actually has a state analysis? But we've just assumed it's South Australia. Assuming it's South Australia, the trainings were not in South Australia, but they were in adjacent states. But again, Miss Babbage was from South Australia. That makes this case really critical again, is this is a targeted training. Presumably the distributor invited Miss Babbage to show up there. They must have had a list. They must have had the contact information of the participants. They went, you know, this was after the second seminar in Sydney. They went there twice in less than a year. They were obviously trying to attract as many people. And, you know, Rajuli at least constructively knew that she was from South Australia. And this court has held that constructive knowledge can be sufficient. But again, I emphasize the act of marketing really makes this case different from McIntyre and all the other cases they mentioned. Now, Aries Holdings is the distributor in Australia. And I gather that it distributes the product to South Australia. Sure. I mean, there's evidence in the record that that happened. And, you know, I think otherwise this case wouldn't arise because the product somehow got to South Australia. Do we have any numbers in terms of the volume of Rajuli products, not necessarily limited to this product that are marketed or distributed by Aries Holdings? We put in some evidence and they emphasize it's not that much. And we agree it's not that much. But, you know, first of all, this court has held that, you know, a single sale or a single act can be sufficient depending if it's directly linked. Yeah. And second, unless it's McIntyre. Yeah. Excuse me? Unless it's single sales enough, unless it's McIntyre. Well, yeah. I mean, I actually wonder whether McIntyre was correctly decided, but, you know, I'm not going to debate that now. I'm telling you, our facts are different. Right. Okay. And yeah, one other point. I mean, I think your Honours are all familiar with this. But of course, first of all, you've got to have an intentional act, but it doesn't have to be in the forum. You know, that's the whole point of purposeful direction is generally an act outside with effects inside. There does have to be express aiming for sure. But we say, I mean, they were face to face with the person from South Australia trying to market the product. And I don't think she just randomly showed up unexpectedly from South Australia. Presumably, she was invited there by the distributor. And the distributors acts can be imputed in this case for the purpose of those seminars because they were organizing on behalf of Rajubi. Okay. Why don't we go from the other side and you save a little time. Thank you. Thank you, Your Honour. Mr. Finestone. Good morning and thank you. Stephen Finestone appearing on behalf of Rajubi Laboratory. Judge Fletcher, if I could answer one of the questions that you ask, which is in the brief that we filed and in the record, are the statistics about the Rajubi sales numbers nationally overall in terms of all of its products and in terms of the product that allegedly caused the damage. And they're very, I don't know what the right word is, I'm going to go with negligible. I think there was something like of this particular product, $4,000 if my memory is correct, over a four year period. So very limited sales to the country of Australia. I think that's one of the areas in which the bankruptcy court got off track, which the bankruptcy court looked at the contacts with the country of Australia, rather than with the state of South Australia. And I think McIntyre makes very clear, to answer one of Judge Miller's questions, makes very clear that you have to look at the contacts in other states. You had four of these large pieces of equipment finding their way to New Jersey, but you had no contacts with the state of New Jersey at all. And so, that analysis was based in part on some ideas about the nature of American federalism. And why do we necessarily get to apply that to Australian federalism? And I mean, just because they're called states, it doesn't necessarily follow that they should be analyzed the same way, does it? Well, I think, Your Honor, that the answer is yes, it does, at least with respect to Australia. And that's the analysis that Judge Chesney went through, which is Australia, which obviously is a very large country, is organized in states much like the U.S. and has state governments. And this was a state court level decision equivalent to our superior courts. And so that there would be no reason to depart from that analysis. I would suggest, why would you look at distributorships in the U.S. and contacts with the U.S. state any different than you want to look at how that took place in Australia? I don't see a logical reason to distinguish between those two. Do we know how Australia treats impersonum jurisdiction questions with respect to one Australian state to another? We do not, Your Honor. There's a discussion in the record about the particular trial court's very brief discussion of jurisdiction, which is, you know, the accident, the person was injured here, and the party was served, so I have jurisdiction. So there wasn't really any you look at the, you can look at the foreign jurisdiction, but you can analyze it that way. But you can also analyze it under the jurisdiction here. So I think we would apply the same logic to this case. No, I'm trying to follow up on Judge Miller's question, because it's actually quite an interesting question. And I'm not sure we need to resolve it here. But just because another country has divisions within the country, whether it calls them provinces as in Canada, states as in Australia, departments as in France, do we necessarily impose upon that country our federalism version of impersonum jurisdiction if that country has quite a different version of impersonum jurisdiction? I'm not sure. That's a hard question. Yes. No, I think that's a fair point, Your Honor. But I think the cases say you don't need to do that. You can look at whether the jurors, how we would apply the jurisdiction here. I think there's limited information in the record. There's one article that is in the record, sort of about the confusing state of jurisdictional analysis in Australia, but there's no in-depth analysis by either side about how Australia views this in any great detail. And one of the points, if you look at the cases like McIntyre, like the Holland America case from this court in 2007, you're talking about defendants that are very large companies. Here, you've got a very small company, gross revenue of around 1.4, 1.5 million on an annual basis, very small profits, eight or nine employees with one office in South San Francisco. And so, you look at these large companies where courts found that there was not jurisdiction, like Holland America, like McIntyre, and some of the other cases that are cited in the brief. And I think that applies or that analysis applies even more when you have a small company like that. You have to show the courts say that you have to have something other than placing the product in the stream of commerce. Even if the defendant knew that the commerce that it was putting the product into may or even would result in their product being swept into the forum state, I think it's the language that courts use. And you need, I think the courts use the phrase something more. And here, Ms. Corso argues that something more is this training in another state and the fact that a clinician went to that training in another state. And that's the something more. There's some disputes in the record about, and I think Judge Fletcher, you touched on this about who arranged this and who was doing the training. There's information in the record about how Areas Holdings in fact had contracted with an Australian company to provide the training. But even if you were to assume all the facts were as Ms. Corso says, and Mr. Kim made a lot of arguments about, you have to assume where Juby knew this or had constructive knowledge of that. I don't think any of that's true and it's not in the record. But even if you assume that the facts are as she has alleged, the connection with the foreign state is with Ms. Babbage, not with Ms. Corso. So I don't think that gets Ms. Corso anywhere. The fact that a clinician went to another state and had some training and maybe brought some product back with her to South Australia doesn't make a connection between Rejuve and South Australia. I wanted to briefly touch on the jurisdictional issue, the argument that Ms. Corso makes with respect to purposeful direction rather than purposeful availment. And there's a discussion about that in this court's College Source v. Academy One decision. Ms. Corso argues that McIntyre did not alter the purposeful direction test, which I think I agree with Mr. Kim on that, but I don't think College Source is helpful at all. In College Source, this court was facing an entirely different situation that involved misappropriation claims, an intentional tort rather than a negligence or product liability type case. And the court found there that the defendants had directed their activity at a California company, and those activities were certain to cause harm in California. And so that's why you have purposeful direction in that case. You don't have anything like this in this case. It's not an intentional tort. There's obviously no evidence and no suggestion that Rejuve directed anything at the state of South Australia or at Ms. Corso. The questions presented or potentially presented in this case, the McIntyre question, if I can call it that, is perhaps a little difficult. But I'm actually, at least at the moment, not finding the question difficult as to whether or not Rejuve submitted itself to the jurisdiction of the Australian court when it tried to set aside the default. So help me out there, because so far I'm not persuaded of your position. Thank you, Your Honor. So two things with respect to that. First, as Judge Chesney found, Rejuve complied with and followed the local Australian rule with respect to setting aside a default judgment. And unlike Rule 60, that is a pretty generic rule that says you have X amount of time and can seek to set aside a default, Rule 41L of the Australian court rules is very specific. You have to first claim that you did not receive process or did not know about the case in time to defend yourself. And two, you have to present a defense on the merits. A prima facie showing that you have a defense on the merits. So Judge Chesney found, and we obviously agree with that analysis, that that's what Rejuve was required to do to get essentially its foot in the door, present those two things. And once it got its foot in the door, I would agree with Judge Chesney that if the court had set aside the default and Rejuve had not asserted the defense of lack of jurisdiction, it would have waived it. Well, but to say that in order to set aside or start the process for setting aside, Rejuve has to comply with these requirements isn't to say that complying with those requirements means that you saved yourself. That is to say, complying with those requirements may indeed have subjected yourself to the jurisdiction of the court. Well, I suppose that's an analysis, but that seems unfair. I guess I would use that word, Your Honor, that you, by complying with the local rules, you've somehow cut your legs out from under you in terms of the waiver argument. It may be unfair, but I mean, when I look at the text of the statute, I mean, it's pretty categorical, right? It says, you know, if you voluntarily appeared for a purpose other than contesting the jurisdiction of the court, there's no, you know, unless you had to because of the local rules of the jurisdiction or any other exception like that. So why isn't it just covered by the language of 1770 and B? Well, that's true. That's what the statute says, Your Honor. But again, I don't, because you're dealing with, instead of Rule 60, you're dealing with a very specific statute in Australia. I don't see how we can be faulted for complying with that statute. But the other point I wanted to make very briefly was that because of the odd way the facts developed in this case, the first time that we had to assert its jurisdictional defense was actually when Ms. Corso came to the district court and filed her enforcement action in the district court. But the standard way, to make it simpler, I'll just stay with a domestic example. The standard way to object to jurisdiction based on lack of impersonum jurisdiction is you don't show up, you don't contest jurisdiction in the forum, you just don't show up at all. And then when the judgment is granted default and enforcement is sought where you are, at that point you contest. But if you go back to the original jurisdiction and contest, unless it's a special appearance that's permitted by the jurisdiction, you're done. And you've got to comply with the jurisdiction determination of the court where you contested it. Yes, Your Honor, except for here, the facts worked out differently. So the first time that we had the opportunity to raise the jurisdictional defense is when Ms. Corso came to the district court and filed a complaint. No, no, you see, that's not true. You could have just ignored that default judgment. And then when Ms. Corso comes to the United States seeking to enforce it, you say, well, there wasn't any jurisdiction. And that's what happened here, Your Honor, that's my point. No, well, we thought, but I thought that you went to Australia and tried to do away with that default judgment on the merits. We did, but did not do that until after Ms. Corso came here and filed her enforcement action. And in its affirmative defenses, Rajuvi raised personal jurisdiction, raised that it had not voluntarily appeared, and that the court in Australia did not have jurisdiction. So the first opportunity Rajuvi had to raise that defense, it did it because of the somewhat peculiar facts of this case where Ms. Corso actually came here first. But it sounds as though you didn't believe in the strength of the defense. And you said, you know, I think I better see if I can get that default judgment set aside because I might lose on my McIntyre claim. Well, I don't know what was going through the counsel's mind. I didn't represent Rajuvi in the district court case, but they did raise it as an affirmative defense, Your Honor. And before they could try that issue, we ended up in bankruptcy court and brought the issue to the bankruptcy court. So I would say, one, the compliance with the local rules, and two, the change it from sort of the traditional analysis. In the cases cited by Ms. Corso, they're all cases in which the other party lost the jurisdictional argument in another court or defended on the merits and then tried to raise the jurisdictional argument later. Rajuvi did not have that opportunity here. The one opportunity it did eventually have to try and get the door open where it could have raised all sorts of defenses, it was unable to get the Australian court to do that. Unless the court has other questions, I'm just about out of time, so I'll stop there. Okay, thank you very much. Mr. Kim? Thank you, Your Honor. Yes, I mean, we agree the personal jurisdiction issue is fascinating, but there's no need to get to it because of the uniform act. The language is clear. Also, I mentioned, though, I don't think it's unfair. Rajuvi had its eyes wide open when it filed its set-aside application. It was opposing summary judgment at the same time. And by the way, the opposition to subjecting judgment did not challenge jurisdiction. I'm pretty sure what happened here is the later counsel came in and said, hey, I've got an argument. That's not the way it works. Anyway, they had their eyes wide open. They didn't challenge jurisdiction in opposing summary judgment. They didn't oppose it in the set-aside. And that's the end of the story. And on this issue, though, if you'd like to go into fairness and the policy issues, I'd really recommend looking at the New York Court of Appeals decision in CIDC Mellon. It's a very good analysis. They cite the restatement. They cite Professor Siegel's commentary. They explain why this is all the case. And getting back to the fairness issue, you've got to remember we're in this phase of enforcing a judgment. Things have already happened overseas. Generally speaking, when you get to that phase, you enforce them unless something's really wrong. And if you refuse an enforcement, generally speaking, the plaintiff is now deprived of any remedy. The statute of limitations, unless it's told, it kind of ran a little while ago. It's not like she can file a new action. So there's really a thumbs on the scale of enforcement, which is reaffirmed by the fact that Ruggieri has the burden of proof on his defenses, including personal jurisdiction. He was talking about how it's speculative. They could have come forward with evidence. They know what happened with their distributor. They didn't come forward with evidence. And there's certainly a strong inference from the evidence that given the nature of the training, they would have invited the distributors. It's not like they showed up the clinicians randomly. But I'm going back to the personal jurisdiction issue, which I don't think is necessary to address because it's really clear they waived it. And that's what all the courts that have concluded. So that's our argument, Your Honor. And thank you again. Okay. Thank you both sides for your helpful arguments. Corso versus Rejuve Laboratory now submitted for decision.
judges: SCHROEDER, FLETCHER, MILLER